Argued and submitted May 10, 1999, reversed June 7, 2000

In the Matter of
the Complaint of Blair Fountain.

TYREE OIL, INC.,
*Petitioner,*

*v.*

BUREAU OF LABOR AND INDUSTRIES,
*Respondent.*

(10-98; CA A102804)

7 P3d 571

Dennis W. Percell argued the cause for petitioner. With him on the briefs was Arnold, Gallagher, Saydack, Percell & Roberts, P.C.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Petitioner Tyree Oil, Inc. (Tyree), seeks review of an order of the Commissioner of the Bureau of Labor and Industries (BOLI) requiring it to reinstate as an employee an individual who was injured while working for another company whose assets Tyree purchased. Tyree argues that it is not the injured individual's employer and is not obligated to reinstate that individual to a job that does not exist. We agree and reverse.

The pertinent facts are not disputed. Cumberland Distributing, Inc. (Cumberland), was in the business of selling and distributing fuel and petroleum products and served trucking, logging, and fishing industry customers along the Oregon Coast. It maintained offices in Reedsport and Coos Bay. Cumberland employed Blair Fountain as a truck driver. It employed eight other full-time and two part-time employees. Tyree also is in the business of selling and distributing petroleum products, primarily serving trucking, mining, railroad, and construction customers. In 1996, it employed 23 employees and maintained offices in Eugene and Roseburg. In the spring of that year, Cumberland planned to sell its assets to Tyree. In May 1996, the president of Cumberland told the company's employees about the plan.

On May 30, Fountain injured his back while working as a tanker truck driver for Cumberland. He filed a workers' compensation claim, which was accepted. Tyree was not informed of the injury or the claim. Fountain was disabled from work from June 7 to July 7, 1996.

Meanwhile, in June 1996, Tyree and Cumberland entered into an "Agreement for Sale and Purchase of Business Assets," by which Tyree purchased Cumberland's assets, including equipment, rolling stock, office equipment, furniture, tools, fixtures, inventories, equipment leases, real property leases, distributorship agreements, and rights to sales orders and purchase orders. Tyree did not purchase Cumberland's accounts receivable. Nor did it assume its accounts payable or any obligations to Cumberland's employees. The agreement specifically provided that all of Cumberland's obligations and liabilities not listed were to remain

Cumberland's obligations and liabilities. The agreement also provided that Cumberland would terminate its employees and would pay each employee any accrued compensation, including vacation and overtime pay.

On June 17, Cumberland terminated the employment of all of its employees, including Fountain. That same day, Tyree hired eight of the former Cumberland employees. Fountain was not among the employees that Tyree hired. The employees that Tyree hired were treated as new employees with respect to health and other benefits. Some of the employees performed the same jobs that they had performed for Cumberland, while others were shifted to different duties. Tyree continues to operate primarily out of its Eugene and Roseburg offices. It uses some of Cumberland's facilities in Reedsport and Coos Bay; some of the facilities are leased out to unrelated tenants. It also uses the equipment and other assets that it purchased, although it has made some changes in business operation and the uses of the equipment. Following the transfer of assets, Cumberland continued its corporate existence.

On July 8, Fountain was released by his doctor for regular work. He sought reinstatement with Tyree, but Tyree responded that it had no obligation to reinstate him, because he never had been a Tyree employee. Fountain filed a complaint with BOLI, and BOLI concluded that, although Tyree had not employed him, it was the successor to Cumberland, which had employed him and thus was obligated to reinstate him in his former position. It is that conclusion that Tyree challenges on review.

■    According to Tyree, the applicable statute provides that an injured worker's employer is obligated to reinstate and that it is not Fountain's employer. BOLI concedes that Tyree is not, and never has been, Fountain's employer. It nevertheless insists that Tyree assumed the obligations of Fountain's employer when it purchased substantially all of Cumberland's assets. Tyree rejoins that the general rule is that a company that purchases assets of another company does not assume that company's liabilities. BOLI agrees that that is the general rule, but argues that, "at least in general terms," Tyree's purchase of assets falls into an exception to

the rule when the purchase of assets amounts to a merger of the companies.

ORS 659.415(1) provides:

"A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position."

On its face, the statutory requirement applies only to "the worker's employer." The question in this case is whether a company that purchases assets of a worker's employer becomes the worker's employer for purposes of ORS 659.415. The statute itself does not address that question. In examining the meaning of a statutory term, however, its common-law context sometimes is helpful in providing a backdrop against which the statute was enacted. *See, e.g., Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998); *Owens v. Maass*, 323 Or 430, 438, 918 P2d 808 (1996).

■   It has long been the general rule in Oregon that, when one corporation purchases all of the assets of another corporation, the purchasing corporation does *not* become liable for the debts and liabilities of the selling corporation. *Erickson v. Grande Ronde Lbr. Co.*, 162 Or 556, 568, 92 P2d 170, 94 P2d 139 (1939). There are four recognized exceptions to that rule:

"(1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts."

*Id.* (quoting *West Texas Refining & D. Co. v. Commissioner of Int. Rev*, 68 F2d 77, 81 (10th Cir 1933)).

BOLI concedes that the first, third, and fourth exceptions do not apply. It argues only that Tyree should be held to have acquired Cumberland's obligations under ORS 659.415(1) because its purchase of Cumberland's assets amounted to a consolidation or merger of the two companies.

In support of that argument, BOLI relies on a nine-factor analysis that has been adopted by several federal courts in employment discrimination cases. *See, e.g., In re National Airlines*, 700 F2d 695, 698 (11th Cir 1983); *Slack v. Havens* 522 F2d 1091, 1094-95 (9th Cir 1975); *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F2d 1086, 1094 (6th Cir 1974). Those nine factors are:

"(1) Whether the successor company had notice of the charge, (2) the ability of the predecessor to provide relief, (3) whether there has been a substantial continuity of business operations, (4) whether the new employer uses the same plant, (5) whether he uses the same or substantially the same work force, (6) whether he uses the same or substantially the same supervisory personnel, (7) whether the same jobs exist under substantially the same working conditions, (8) whether he uses the same machinery, equipment and methods of production, and (9) whether he produces the same product."

503 F2d at 1094.

We express no opinion as to whether ORS 659.415(1) applies to successor employers or as to whether, if it does, the nine-factor test that BOLI proposes should be employed as a matter of Oregon law. Even assuming the statute applies to successor employers and that the nine-factor test applies, we conclude that, on this record, Tyree did no more than purchase Cumberland's assets and is not therefore a successor employer. In arriving at that conclusion, we note that Tyree received no notice of Fountain's claim until after the asset purchase had been completed. We also note that Cumberland still exists as a separate entity and that the two companies have completely different ownership and management. Tyree did hire eight of Cumberland's employees, but they constitute a relatively small portion of Tyree's workforce. Similarly, Tyree operates primarily out of Eugene and Roseburg. It continues to use some of Cumberland's facilities in Reedsport and Coos Bay, although it leases out some of the premises. It also has initiated a number of changes to the jobs of the former Cumberland employees and made changes to the use of the equipment and other assets.

BOLI acknowledges the foregoing distinctions between Tyree and Cumberland, but it emphasizes in its analysis the fact that Tyree continues to use Cumberland's plant and machinery in producing the same products. That is true enough, but it can hardly be controlling. Tyree would not have purchased the assets if it had not intended to put them to use. Indeed, if the mere use of such assets were controlling, virtually any purchase of assets would amount to a merger, a conclusion that is manifestly contrary to the general rule.

We conclude that the Commissioner erred in concluding that Tyree is obligated under ORS 659.415(1) to reinstate Fountain.

Reversed.