ORDER GRANTING DEFENDANT DEPARTMENT OF REVENUE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
 I. INTRODUCTION
This matter is before the court on cross-motions for partial summary judgment. Defendant Department of Revenue (the department) has moved to have dismissed all claims of Georgia-Pacific Consumer Products, LP, formerly known as Fort James Operating Co. (taxpayer) based upon any allegations as to value of previously nonexempt property, as described below. *Page 2 
Taxpayer has moved for an order directing how the property in question should be appraised for trial. The parties have submitted material for the record. In view of the provisions of ORS 305.487, the court has expedited consideration of these motions.[1]
 II. FACTS
The submissions of the parties indicate the following facts. Taxpayer owns and operates a large pulp and paper mill at Wauna, Oregon, in Clatsop County (county). The land under the mill and many improvements were in existence and operating prior to the 2004 property tax year. Those existing improvements were subject to property taxation and are referred to in this order as the nonexempt property. For the 2004 tax year, taxpayer appealed the value of the nonexempt property, and a modest downward adjustment was made. (Def's Mot for Partial Summ J, Aff of Clatsop Cnty Assessor, Ex 5 (hereinafter Aff of Assessor).) For the succeeding tax years, taxpayer did not appeal the valuations of the nonexempt property.
Taxpayer proposed to build an additional facility at the mill. Taxpayer sought to have this facility included in an enterprise zone so that property tax exemption would be obtained, beginning in the 2004 tax year. See generally ORS chapter 285C. The application of the taxpayer was approved. Construction of the improvement, referred to in this order as the exempt property or as the formerly exempt property, was begun in 2004 and completed in 2005. The application of taxpayer stated that the exempt property was neither an addition to nor modification of an existing building. (Def's 2d Supplemental Br in Supp of Def's Mot for Partial Summ J, Exs L-1 to L-3.) *Page 3 
The application also stated that the exempt property did not involve reconditioning, refurbishment, upgrading, or retrofitting of other property. (Id.) The nonexempt property and the exempt property are included in the same property tax account.
A condition of retaining exempt status for the exempt property was the maintenance of certain employment levels throughout the exemption period. Taxpayer was unable to achieve this goal for the 2006 tax year and so notified the county. (Aff of Assessor at 3.) In accordance with ORS 285C.240(6), taxpayer made a tax payment in respect of the exempt property. (Id.)
For the 2007 tax year, taxpayer may also have failed to achieve required employment levels, and the status of the exempt property as exempt was revoked by the county. (Id.) The 2007 tax year is not included in this proceeding. For purposes of these motions, it is assumed that the revocation of exempt status was valid. In accordance with ORS 285C.240, the county assessed taxes in respect of the exempt property for the 2004 and 2005 tax years.
Taxpayer asserts that, assuming the revocation of exempt status was proper, the additional tax computed pursuant to ORS 285C.175 and assessed under ORS285C.240 was improperly computed. Taxpayer argues the correct computation must include a review and potential change to the real market value (RMV), maximum assessed value (MAV), and assessed value (AV) for the nonexempt property as well as for the exempt property for all years involved in the calculation of additional tax due.
The department and county defend the computation of the additional tax computed under ORS 285C.175 and assessed pursuant to ORS 285C.240. They maintain that no revision of the RMV, MAV, or AV for the nonexempt property is permitted. They have, however, taken the position that taxpayer may now challenge whether the RMV, MAV, and AV of the formerly *Page 4 
exempt property were properly computed.[2]
Taxpayer and the department separated on the question of whether, in determining the additional tax due under ORS 285C.240, there must be a reconsideration of the RMV, MAV, and AV determined in the past for the nonexempt property. The time period for challenge to those amounts under any other statutes had expired at the time taxpayer began this challenge.
 III. ISSUE
What is the proper methodology for computing additional tax due under ORS 285C.240 when one tax account includes both previously exempt property and nonexempt property, particularly in instances where otherwise applicable time limits for appeal of tax determinations as to previously nonexempt property have expired?
 IV. ANALYSIS
The major premise of the position of taxpayer is that all value determinations for property in a tax account may be challenged if the value of previously valued property in the account is open for review. For this proposition, taxpayer relies on the decision inFlavorland Foods v. Washington County Assessor,334 Or 562, 54 P3d 582 (2002) (Flavorland). The minor premise of taxpayer's argument is that the disqualification of exempt property permits a review of the valuation of formerly exempt property. Taxpayer then concludes that, upon disqualification of the formerly exempt property, the previously taxable property is open to revaluation for the *Page 5 
purpose of determining the additional tax due under ORS 285C.240 and for purposes of applying the constitutional limitations on property tax existing in Oregon.
The department accepts Flavorland, but views it as only requiring consideration of the sum of the MAV determinations for each of the properties in a tax account when it becomes necessary to determine the lesser of that aggregate MAV and the aggregate RMV determinations for the account. It argues, however, that the MAV determinations and RMV determinations are to be made individually for each property in the account and then aggregated. Both aggregations are done, in the view of the department, for purposes of applying Article XI, section 11(a) of the Oregon Constitution (Measure 50). The department asserts that in computing additional tax due under ORS 295C.240 in respect of years prior to the year of disqualification from enterprise zone benefits, any RMV or MAV calculation for nonexempt property is fixed, at least where, as here, otherwise applicable time limits on challenge to those amounts have expired.
A comparison of the arguments of the parties demonstrates that the application of the Flavorland decision to determinations under ORS 285C.175 is a major point that separates them.
Flavorland was a case in which a tax account contained two properties, land and an improvement to the land. 334 Or at 566. The opinion of the Supreme Court addressed the meaning of the phrase "each unit of property," found in Article XI, section 11(1)(a).Id. at 567-78. The decision focused on the following facts: For the tax year 1998-99, the facts were as follows:
 RMV MAV
 Land $691,130 $ 421,785
 *Page 6 
 Improvement $2,080,030 $3,029,269[3]
 Total $2,771,160 $ 3,451,054
Id. at 566; see also Flavorland Foods v. Washington CountyAssessor, 15 OTR at 183 (2000).
The taxpayer in Flavorland argued that the MAV for the land in the account had to be applied separately in determining which was the lesser of the MAV or the RMV of the land. 334 Or at 566. The result would be that, because the 1998-99 RMV of the land exceeded its separately stated MAV, the AV for the land would be the 1998-99 MAV of $ 421,785. Id. The parties did not differ as to treatment of the improvement.[4]
In Flavorland, the department argued that an aggregate number for MAV was to be calculated for the account and that aggregate number ($3,451,054), composed of the sum of separately calculated MAVs for land and improvement, was then to be compared with the aggregate RMV for the properties in the account ($2,771,160).See id. at 566. The lesser of the two composite numbers would determine whether the requirements of Measure 50 (that AV is never to exceed RMV) had been satisfied. See id.; see also
ORS 308.146(2). However, if Measure 50 was satisfied on that aggregate comparison, it would not be a violation of Measure 50 if the AV for any particular property in the account was based on an RMV that exceeded the separately determined MAV for that property. 334 Or at 566.
The holding of Flavorland is that Measure 50 protections, embodied in the rule that AV is the lesser of RMV or MAV for "each unit of property," are to be applied on a property tax *Page 7 
account level, using an aggregate of the separately computed MAV and RMV numbers for each property in the account. Id. at 575. Nothing in Flavorland suggests that properties are to be "combined" in the process of determining the MAV or RMV numbers for the account so as to require revaluation of all property when the valuation of any property may be done. In fact, inFlavorland, the court specifically noted the separately determined values for each of the assets in the account. 334 Or at 566.
Flavorland is fully consistent with the position that RMV and MAV of each asset in an account are determined separately, but the Measure 50 comparison of RMV and MAV is done by aggregating such determinations. Id. at 567-78. In Flavorland, the parties agreed on the value of the land and improvements in all years. Indeed, the parties in Flavorland agreed on the MAV numbers for the separate assets in the account. Seeid. at 566. The only issue in the case was whether the Measure 50 protections were applied on an asset by asset basis or on the basis of the combined numbers for all assets in the account. Seeid. at 567.
Importantly for this case, Flavorland did not involve a property tax account containing some previously exempt and some previously nonexempt property. Rather, the case involved a property tax account in which land and improvements were both taxable in all relevant years and had separate RMV and MAV values determined in all relevant years. See id. at 566. Flavorland did not involve any exemption, partial exemption, or special assessment program, or the rules for calculation of tax due upon the termination of an exemption, partial exemption, or special assessment. Finally,Flavorland did not involve a multiple-property account where RMV, MAV, and AV for one property had been determined in an earlier year, and such values for another property were subject to review in a later year. *Page 8 
In short, Flavorland does not speak to most of the aspects of this case.[5] The only teaching of Flavorland that is applicable to this taxpayer relates to an issue not before this court, at least at this stage and on these motions. That issue is whether, for any given tax year, the aggregate MAV for all property in the tax account is greater or less than the aggregate RMV for the same properties.
The court is of the opinion that, taking into account the apparent concession of the department as to the lack of finality to the earlier determinations of the county assessor of the AV of the previously exempt property, the constitutional and statutory provisions should be read to provide the following methodology in the computation of tax to be imposed on disqualification of property from exempt status, in the case of an account with historically nonexempt as well as exempt property:
 1. The historically nonexempt property remains unaffected, except to the extent that a taxpayer may be permitted under other statutes to challenge the property tax computations for the year of disqualification or an earlier year. Absent any such statute, no increase or decrease in value or tax occurs. The settled expectations of taxpayers and governments are met.
 2. For the historically exempt property, from the year of exemption forward, a determination of RMV, MAV, and AV is made for the disqualified asset for each year. MAV is determined using the rules of ORS 308.153 for the year the property was added to the account and pursuant to ORS 308.146 for years thereafter. The AV for each year is the basis for computation of the tax that would have been due if the exemption had not been granted. This, of course, could be the same as the amount that the assessor calculates and notes on the roll under ORS 285C.175. The aggregate of these amounts for the years when exemption had been granted is then assessed pursuant to ORS 285C.240. *Page 9 
 3. The amount determined under point 2 above will not be more than would have been paid if the property had been taxable in the first place because, under ORS 285C.175, a calculation implicitly subject to Measure 50 limits is done.[6]
Although not at issue in this motion, the court notes that separately from any such tax "recapture" calculation and assessment under the enterprise zone statutes, there would be a need to calculate the MAV for the year that the formerly exempt property ceases to be exempt. The constitution and statutes specify how this computation of MAV is to be done. It is to be determined by multiplying the RMV of the disqualified property by the so called "changed property ratio" for the year the exemption terminates.See ORS 308.146(3)(e).[7] This number is then added to the MAV of any other property not affected by the disqualification. ORS 308.156(5).[8] *Page 10 
Taxpayer argues that in determining the additional tax due under ORS 285C.240, the provisions of ORS 308.142, ORS 308.146, ORS 308.156, independently or together, require recalculation of the RMV, MAV, and AV for all property in a tax account for the years during which a portion of the property had the benefit of the exemption. Taxpayer's argument would mean that values that have been determined, that have resulted in tax payment, and that are beyond the relevant time limitations on appeal are nonetheless open for reconsideration.
Nothing in the language of ORS 308.142, ORS 308.146, or ORS 308.156 supports the contention of the taxpayer. Those are statutes directed at the computation of MAV for all assets in a tax account and the comparison of that value with the RMV for the same assets. Like Flavorland, the statutes specify what assets are to be taken into account. That does not answer the question of how the assets are accounted for, and particularly, whether settled values for some assets are to be reopened. Taxpayer argues that these statutes, none of which call into question or allow challenge to normally determined RMV amounts, nonetheless justify setting aside the already determined RMV for the nonexempt property in the account and the MAV and AV numbers derived from that RMV. Taxpayer appears to argue that Measure 50 requires such a reading.
In the adoption of Measure 50, the public is deemed to have been aware of the general property tax system affected by that referred measure. See Martin v. City of Tigard,335 Or 444, 451, 72 P3d 619 (2003). In the adoption of the statutes implementing Measure 50, the legislature is deemed to have been aware of that same system. See Premier West Bank v. GSA Wholesale,LLC, 196 Or App 640, 649, 103 P3d 1169 (2004). The property tax system is, and has for its *Page 11 
entire existence, been one that annually and inexorably functions to determine the property tax liabilities of taxpayers and receipts of local government.
The system has also been characterized by limited time periods within which both taxpayers and governments may challenge the annually determined roll values for property and other values that are a function of such roll values. Certain statutes, such as ORS 305.288 and ORS 306.115, provide limited retrospective relief to taxpayers who believe they have been improperly treated and who have not availed themselves of challenges in the year of assessment or other adverse government action. Likewise, assessors may recover from certain errors made in the assessment process under the "omitted property" and "error correction" provisions of ORS 311.205 to 311.234.
Apart from such explicit statutory provisions or current appeal, roll values and tax obligations are fixed. The court sees nothing in the language of Measure 50 or the statutes implementing Measure 50 that change that basic and critically important feature of the property tax regime in Oregon. Most importantly, nothing in the Measure 50 provisions touching on disqualification of property from exemption or in the implementing statutes, or in the provisions of ORS chapter 285C suggest in any way that a taxpayer may let challenges to value determinations for nonexempt property pass and yet be able to raise them on the occasion of the disqualification of other previously exempt property in an account.
All of the protections of Measure 50 can be achieved without such special, and textually unsupported, retrospective challenge. Taxes on nonexempt property will, in all cases, either have been determined consistently with Measure 50, or the taxpayer will have had a remedy by due course of law in the year when any Measure 50 failure occurred under statutes such as *Page 12 
ORS 306.115.[9] In addition, any tax due under ORS 285C.240 in respect of the previously exempt property, however and whenever determined, must, under Measure 50, not exceed what would have been due, subject to Measure 50 limitations, if the property had not been treated as exempt. Even with separate consideration of the assets that are in the one tax account, all protections of Measure 50 will have been afforded. Nothing more is needed or required.
 V. CONCLUSION
The motion of the department is granted, and the motion of taxpayer is denied. The case will continue for further motions, or trial, or both. Now, therefore,
IT IS ORDERED that Defendant Department of Revenue's Motion for Partial Summary Judgment is granted; and
IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Partial Summary Judgment is denied.
Dated this ___ day of July, 2010.
THIS DOCUMENT WAS SIGNED BY JUDGE HENRY C. BREITHAUPT ONJULY 21, 201, AND FILED THE SAME DAY. THIS IS A PUBLISHEDDOCUMENT.
[1] All references to the Oregon Revised Statutes (ORS) are to the 2007 edition.
[2] ORS 285C.240(3)(a) states that in the event of disqualification, the amount of tax computed under ORS 285C.175 shall be assessed. The statutes contemplate annual determinations of RMV, MAV, and AV for the exempt property, and tax due in the event the exemption is lost. See ORS 285C.175(7) and ORS 285C.240(7). ORS 285C.175(7) requires that the AV of the exempt property and the potential tax due upon disqualification be noted on the assessment roll. The department expressed its view that taxpayer may challenge the amount of potential tax due as computed and noted on the assessment roll. The department bases its conclusion on the premise that taxpayer did not have standing in earlier years to challenge the value determinations because, in those years, the existence of a complete exemption made the question of value one without practical significance sufficient to make a challenge at that time justiciable. Taxpayer takes the same position. The court expresses no opinion on the question.
[3] This number was not stated in the opinion, but is estimated from the facts for a prior year. It is stated here for context and was not important to the decision. Implicitly, the number was some amount equal to or greater than the RMV of $2,080,030.
[4] All parties in Flavorland agreed that the AV for the improvement would be its RMV for the 1998-99 year, $2,080,030.Id. at 566.
[5] This court's decision in Chart DevelopmentCorp. v. Department of Revenue, 17 OTR 170 (2003) is not inconsistent with the foregoing review and application ofFlavorland.
[6] Measure 50 expresses the "no more than if taxable" limitation only as to property that was subject to partial exemption or special assessment. See Or Const, Art XI, § 11(2). Whether the exemption in this case is considered partial or complete, the Measure 50 limitations are applicable either explicitly or implicitly.
[7] The court notes that ORS 308.146 contains two rules applicable to property subject to exemption, partial exemption, or special assessment. The first rule is found in ORS 308.146(3)(e) and states how MAV for such property is to be determined for the transition year in which the property comes out of exemption, partial exemption, or special assessment. The methodology to be used is stated in ORS 308.146(3): use the rules stated in ORS 308.149 to 308.166. Of those rules, ORS 308.156(4)(a) addresses property transitioning from any level of exemption or special assessment. It states MAV is to be determined "under this section," which is clearly a reference to ORS 308.156(5). Subsection 5 explicitly directs that any portion of property that is not exempt or specially assessed have a MAV determined separately from the MAV for any portion of property that is exempt or specially assessed.
The RMV protection promised by Measure 50 is found in ORS 308.156(5). That language contemplates testing aggregate RMV against the aggregate MAV determined under subsection 5.See ORS 308.156(5). In all cases, such determinations are for the transition year and do not address prior years or tax calculations for prior years.
[8] The second of the MAV rules found in ORS 308.146 relevant to property exemption and special assessment is found in ORS 308.146(4). That subsection only addresses partial exemption and special assessment. The subsection directs the reader to the statutes providing partial exemption or special assessment for methodology on calculation of MAV and AV. Id. Thus, for example, resort would be made to ORS 308A.107 to find rules for determinations of MAV and AV of specially assessed farmland. Those provisions calculate an MAV that will be some amount greater than zero because the special assessment, like a partial exemption, does not result in an exempt or zero AV. This is why the provisions of ORS 308.146(4) do not purport to apply to full exemption. ORS chapter 285C provides for a full exemption. ORS 285C.175(3) states that. Further, ORS chapter 285C has no special provision for calculation of MAV. If ORS chapter 285C provided for partial exemption, it would have such rules to which ORS 308.146(4) refers.
[9] Taxpayer has suggested that it somehow could not have challenged the value determinations on the nonexempt property in this account before the disqualification. The law places no such limit on them. Indeed, contrary to this assertion, taxpayer did in fact successfully challenge such values for 2004, one of the years for which enterprise zone treatment was effective for some of the property in the tax account. (Aff of Assessor, Ex 5.) The record indicates that taxpayer had more than sufficient information from which to determine what property tax treatment was afforded each year to the nonexempt property.